IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATTIE A. COXEY,

      Plaintiff,                         No. CIV S-09-2530 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                  ORDER

_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment motions are pending. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I.      BACKGROUND

      Plaintiff formally applied for DIB on January 14, 2003, alleging that she had been disabled since January 21, 2000. Administrative Record ("AR") 518. Plaintiff's application was denied, and she appealed the denial to the United States District Court for the Eastern District of California. *Id.* The district court remanded the case for further proceedings, finding that the administrative law judge ("ALJ") had improperly assessed the plaintiff's credibility and did not

specifically discredited plaintiff's treating physician's opinion. *Id.* On April 28, 2009, a hearing was held before ALJ John J. Madden. *Id.* Plaintiff was represented by counsel and testified at the hearing. *Id.*

The ALJ's May 14, 2009 decision found that plaintiff was not disabled from the date of her application through the date last insured.[1] *Id.* at 518-25. The ALJ made the following specific findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2005.
>
> 2. The claimant did not engage in substantial gainful activity from her alleged onset date of January 21, 2000 through her date last insured of September 30, 2005 (20 CFR 404.1571 *et seq.*).
> ...
>
> 3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia and low back pain (20 CFR 404.1520(c)).
> ...

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
>    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

>   4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>   ...
>
>   5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six to eight hours per eight-hour work day, and stand and/or walk for up to six hours per eight-hour work day. The claimant is not able to perform frequent bending, stooping, climbing, crouching, or crawling.
>
>   ...
>
>   6. Through the date last insured, the claimant was capable of performing past relevant work as an apartment manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>   ...
>
>   7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 21, 2000, the alleged onset date, through September 30, 2005, the date last insured (20 CFR 404.1520(f)).

*Id.* at 520-25.

The ALJ's decision became the final decision of the Commissioner of Social Security. *Id.* at 515-517.

## II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

*Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in 1) failing to follow the specific instructions of the district court that on remand the ALJ must conduct a proper credibility analysis; 2) rejecting plaintiff's subjective testimony without providing clear and convincing reasons for doing so; 3) improperly rejecting the opinions of plaintiff's treating physician without providing specific and legitimate reasons for doing so; 4) improperly rejecting lay witness testimony; and 5) basing his decision on the VE's testimony based on a hypothetical that did not accurately reflect plaintiff's limitations. Dckt. No. 22 at 5.

A. The ALJ Followed the District Court's Instructions on Remand.

The district court found that the previous ALJ "failed to properly analyze the evidence in relation to the appropriate factors required by the *Bunnell* line of cases." AR 559 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). The court wrote:

> In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. *Id.* at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. *See id.* at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be

4

relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

AR 555-56. After discussing the ALJ's opinion, the court concluded: "the ALJ failed to properly analyze the evidence in relation to the appropriate factors required by the Bunnell line of cases." *Id.* at 559.[2]

On remand, following another hearing, ALJ John Madden found that plaintiff's testimony was not entirely credible. He wrote that plaintiff's "alleged limitations are not supported by the objective evidence to the extent claimed. Furthermore, inconsistencies in the record reduce the reliability of her statements." *Id.* at 552. The ALJ then discussed some of the medical evidence in the record, including various doctors' opinions regarding plaintiff's limitations. Although the bulk of this section of the ALJ's opinion focuses on the medical evidence, it also contains additional reasons for rejecting the plaintiff's testimony. The ALJ wrote that Dr. Goodwin recommended conservative care to treat plaintiff's persistent thoracic spinal pain and fibromyalgia, but "based on the record as subsequently developed, it appears only a few of Dr. Goodwin's enumerated recommendations were followed." *Id.* The ALJ noted that Dr. Sommer "observed that plaintiff exhibited pain behaviors," and the physical therapists who examined plaintiff reported that she had "pain behaviors, as well as apparent functional discrepancies noted between the claimant's demonstrated efforts on examination versus when she was distracted" and that she "perceives herself as more limited than she is." *Id.* at 523, 24.

Plaintiff argues that the ALJ "undertook the exact same approach to credibility analysis as the ALJ before him," which the district court previously found to be legally inadequate. Dckt.

---

[2] The court also found that because the previous ALJ had erred in assessing plaintiff's testimony, he also improperly assessed plaintiff's husband's testimony. AR 560. The court gave the following direction, "After remand for further development of the record, the ALJ may determine to reassess this witness testimony." *Id.* at 561.

No. 22 at 8. Therefore, plaintiff argues "this ALJ's credibility analysis fails for the same reasons as that of the ALJ who preceded him on this case, for the reasons set forth by the Court in its remand order." *Id.* at 9.

Plaintiff's argument is unconvincing. The district court reversed the previous ALJ's opinion because it provided only one reason for rejecting plaintiff's subjective testimony–that it was inconsistent with the medical evidence. AR 556 (noting that the previous ALJ wrote only "These allegations are not credible and are not supported by the medical evidence"). Under *Bunnell*, this reason is not legally sufficient to discredit plaintiff's testimony. The remand order did not require the ALJ to address all of the factors it listed; rather, the order only noted that those factors "may" be considered. ALJ Madden provided additional reasons for discrediting plaintiff's testimony–that although her doctor had recommended conservative care, plaintiff did not appear to have followed his recommendations, and that plaintiff exhibited greater physical abilities when she was distracted, and was not as limited as she claimed to be. Thus, the ALJ followed the instructions in the remand order by providing additional reasons for rejecting plaintiff's testimony.

B. The ALJ Properly Gave Clear and Convincing Reasons for Not Crediting Plaintiff's Testimony.

Plaintiff argues that the ALJ gave legally inadequate reasons for rejecting her testimony. The ALJ noted that plaintiff testified that she could lift no more than 10 pounds occasionally and 3 to 5 pounds frequently, sit or stand for no more than 10 to 15 minutes at a time, and needed to be able to lie down for 30 to 45 minutes at a time after 20 minutes of activity. *Id.* at 522.

As explained above, the ALJ gave three principal reasons for discrediting plaintiff's testimony: 1) plaintiff's alleged limitations were not supported by the objective medical evidence to the extent claimed; 2) examination showed that plaintiff was not putting out her full effort, and perceived herself to be more limited than she actually was; and 3) Dr. Goodwin recommended conservative care to plaintiff, but she did not follow all of his recommendations.

1 *Id.* at 522-25. Plaintiff argues that these reasons are not sufficiently clear and convincing to
2 satisfy the *Bunnell* line of cases.

3 As to the first reason, the ALJ explained that an MRI of plaintiff's spine showed minimal
4 abnormalities; an xray of the spine on the date of plaintiff's injury was normal; and her treating
5 physician, Dr. Mott, thought that she could perform light work. *Id.* at 523. Dr. Michelson found
6 that plaintiff had grossly normal range of motion testing with the exception of "slight muscle
7 tenderness" to palpitation over the lower back, and there was no muscle spasm and muscle tone
8 was equal throughout. *Id.* Dr. Goodwin found that no Waddell's signs were present, although
9 plaintiff had 14 of 18 trigger points, consistent with a diagnosis of fibromyalgia. *Id.* Thus, the
10 objective medical evidence did not corroborate the severe limitations plaintiff attested to.

11 As to the second reason, the ALJ noted that the physical therapy evaluation, as well as
12 some of the doctors' opinions, showed that plaintiff was not as limited as she perceived herself
13 to be. On the basis of her treating physican's suggestion, the previous ALJ had arranged for
14 plaintiff to participate in a physical capacity evaluation. *Id.* at 465. The evaluators noted that
15 plaintiff

> demonstrated greater range of motion and/ or more normal movement patterns
> when distracted. For example, the client 'duck walked' with knee flexed when
> attempting to carry 15 pounds less than 20 feet during testing; however, the client
> was observed to have fairly normal gait when carrying a large purse, 16 ounces of
> water in a bottle, and two pillows when entering and exiting the testing area
> (greater than 20 feet in distance). Also, during positional activity testing, the
> client demonstrated difficulty keeping knees extended when in stance, however at
> conclusion of entire testing, the client stood without any difficulty (normal stance)
> for 5 to 10 minutes talking with this therapist.

22 *Id.* at 470. The therapist continued, "The client perceives herself as more limited than she is,"
23 and "high subjective pain complaints during testing do not match observations of function when
24 distracted . . . . The client reported 9/10 pain during Materials Handling but did not demonstrate
25 any physiological signs that would correlate to intense pain (almost considered to be an
26 emergency situation according to the pain scale used), such as increased heart rate, flushed face,

7

or increased respiration." *Id.*

The court finds that both of the foregoing reasons are clear and convincing. Plaintiff takes issue with the factual accuracy of the third reason given by the ALJ for finding plaintiff less than credible–that Dr. Goodwin prescribed conservative care, yet plaintiff appears not to have followed some of his recommendations. *See* Dckt. No. 22 at 18. Because the ALJ provided at least two clear and convincing reasons for finding plaintiff's testimony not credible, the court need not rule on whether the last reason is also clear and convincing.

### C. The ALJ Provided Legally Adequate Reasons for Rejecting Plaintiff's Physician's Opinion.

Plaintiff argues that the ALJ erred in rejecting the opinions of her treating physician, Dr. Richman, "as supported and corroborated by" Dr. Goodwin and Dr. O'Sullivan's records.[3]

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is

---

[3] Dr. Goodwin is a pain specialist who examined plaintiff at the request of Dr. Richman. *See* AR 369-73. As the ALJ noted in his opinion, Dr. Goodwin did not provide any opinions regarding plaintiff's ability to work. Thus, the ALJ was not required to specifically address Goodwin's evaluation in his decision. Similarly, Dr. O'Sullivan, an orthopedic specialist, offered no opinions regarding plaintiff's ability to work, and the ALJ was not obligated to specifically address his evaluation. *See id.* at 485-88.

accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Richman was plaintiff's treating physican from April 2001 through January 2006. *See* AR 239-319; 381-429. Richman gave the following opinion: plaintiff could work "4-6 hours depending on [the] type of work" in an 8-hour day; she was limited to sitting and standing for 20 minutes at a time; "per patient," she needed to lie down for 45 minutes five or six time a day; she could occasionally lift up to 10 pounds, but never more than that; she could never climb and could only occasionally bend. AR 367. Richman wrote on the evaluation, "consider work evaluation by physical therapy for detailed evaluation of work restrictions." *Id.* at 368.

As noted by the ALJ, Richman's opinion was contradicted by the opinions of Drs. Mott, Sommers, Webb, Michelson, Clancey, and Bianchi. *Id.* at 524. Therefore, the ALJ needed only to provide specific and legitimate reasons, rather than clear and convincing reasons, for rejecting Richman's opinion.

The ALJ gave the following specific, legitimate reasons for rejecting Richman's opinion. First, Richman's opinion was "essentially reflective of information" plaintiff had provided to the doctor, "as they went through the form together," and was therefore "largely based on the [plaintiff's] subjective complaints." *Id.* at 523. Plaintiff argues that "there is no substantial basis" for assuming that Richman based her opinion solely on plaintiff's subjective complaints. Dckt. No. 22 at 11. But plaintiff testified that the opinion "was a form [she had gone] over with Dr. Richman," and that Dr. Richman "was asking me questions, and she was writing it down." AR 501. Thus, there is substantial evidence to support the ALJ's finding that the opinion

9

1   reflected plaintiff's subjective complaints.  Second, the ALJ wrote that Richman's opinions are
2   "not fully corroborated by clinical findings." *Id.* at 524.  As explained above in the section
3   discussing plaintiff's credibility, this reason is also supported by substantial evidence.  Third,
4   Richman wrote on her opinion that a physical therapist should perform a work evaluation to
5   determine plaintiff's work restrictions in detail. *Id.*  As explained above, the work evaluation
6   was performed, and the results did not support Dr. Richman's opinion.  Instead, the examiners
7   found that plaintiff's limitations were not as severe as she claimed.  Richman herself suggested
8   that more evidence was needed in order to determine the extent of plaintiff's limitations; that
9   evidence undercut Richman's original opinion.  Thus, the ALJ's third reason for discounting
10  Richman's opinion is also supported by substantial evidence.

D.      <u>The ALJ Did Not Reject Plaintiff's Husband's Testimony.</u>

12      Plaintiff also argues that the ALJ erred in rejecting her husband's lay witness testimony.
13  Plaintiff's husband testified that he had been married to plaintiff for three years, and they had
14  been together for ten years.  AR 504.  He testified that his wife did most of the housekeeping.
15  *Id.* at 505.  He testified that she did not sit "much at all" but lay in bed a lot. *Id.* at 506.  He
16  testified that she had to lie down "after a few hours" and could not "stand on her feet for any
17  length of time." *Id.* at 507.  He had "see[n] her lay down off and on virtually all day." *Id.*
18      Regarding his testimony, the ALJ wrote:

> The claimant and her husband testified that she needs to frequently lie down, which is reflected on Dr. Richman's form as information related by the claimant . . . . However, while the claimant may in fact lie down with such frequency, the record does not provide objective evidence to justify such a limitation is medically necessary.  This claim is given little weight.

22  *Id.* at 524.
23      Thus, the ALJ rejected plaintiff's testimony that she *needed* to frequently lie down.  As
24  explained above, he provided legally adequate reasons for doing so.  Plaintiff argues that the
25  ALJ also rejected plaintiff's husband's testimony that corroborated that she *does* lie down
26  throughout the day.  But the ALJ did not reject plaintiff's husband's testimony.  Plaintiff's

10

husband merely testified that plaintiff lay down throughout the day. The ALJ found that this might be true. However, the ALJ found that it was not medically necessary for plaintiff to do so. As a lay witness, plaintiff's husband offered no opinions regarding the medical necessity of plaintiff's habits. The ALJ did not err in assessing plaintiff's husband's testimony.

E. <u>The ALJ Did Not Err in Basing His Decision on the Opinion of the Vocational Expert.</u>

Plaintiff's brief contains a heading stating "The ALJ erred by basing his decision on the opinion of the vocational expert, based on an incomplete hypothetical which failed to accurately reflect Plaintiff's condition; and by disregarding the vocational expert's answer when questioned concerning Plaintiff's actual condition as evidenced by the record." Dckt. No. 22 at 23. Underneath the heading, plaintiff writes only, "See above." Defendant's brief addresses this argument in a footnote. *See* Dckt. No. 28 at 16 n.2.

As explained above, the ALJ did not commit reversible error in assessing the plaintiff's RFC. The ALJ obtained testimony from the VE regarding a hypothetical based on that RFC. The ALJ did not err in accepting the VE's testimony that plaintiff could perform her past work.

IV. <u>CONCLUSION</u>

The court finds that, apart from harmless error, the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk of the court is directed to enter judgment in the Commissioner's favor and close the case.

DATED: September 29, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE